IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

_____

DAMEON W.,                          )
                                    )
    Plaintiff,                       )
                                    )
v.                                  )        No. 24-cv-1072-TMP
                                    )
MARTIN O'MALLEY,COMMISSIONER        )
OF SOCIAL SECURITY                  )
ADMINISTRATION,                     )
                                    )
    Defendant.                       )
                                    )

_____

ORDER AFFIRMING THE COMMISSIONER'S DECISION
_____

On April 1, 2024, Dameon W. ("Plaintiff") filed a complaint seeking judicial review of a social security decision.[1] Plaintiff seeks to appeal a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Title XVI disability benefits. (ECF Nos. 1, 15.) For the following reasons, the decision of the Commissioner is AFFIRMED.

## I.    BACKGROUND

On May 26, 2021, Plaintiff filed his application for supplemental security income benefits under Title XVI of the Social

---

[1]After the parties consented to the jurisdiction of a United States magistrate judge on May 31, 2024, this case was referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73. (ECF No. 11.)

Security Act ("Act"), 42 U.S.C. §§ 404-434.[2] (ECF No. 10-3 at PageID 78.) Plaintiff was born June 15, 2020, and he alleges that his disability began on November 28, 2020. (Id.) Plaintiff's claim was initially denied on April 14, 2022. (ECF No. 10-4 at PageID96.) His request for reconsideration was denied on September 28, 2022. (Id. at PageID 110.) Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on October 31, 2022. (Id. at PageID 116.) The hearing was held telephonically before ALJ John Peebles on April 24, 2023. (ECF No. 10-2 at PageID 35.) ALJ Peebles issued his written decision denying benefits on May 17, 2023. (Id. at PageID 35-42.) Plaintiff then filed his request for review with the Appeals Council on June 14, 2023, which was denied on February 26, 2024. (ECF Nos. 10-2 at PageID 19; 10-4 at PageID 206-07.) Plaintiff appealed the matter to this court on April 1, 2024, where the May 17, 2023 decision represents the final decision of the Commissioner. (ECF No. 1.)

Plaintiff alleges that he is disabled because of congenital heart disease, a heart murmur, and a leaky heart valve. (ECF No. 10-6 at PageID 237.) After considering the record and the testimony given at the hearing, ALJ Peebles used the five-step analysis to

---

[2]Other documents within the record indicate that the application was filed June 3, 2021. (See ECF No. 10-5 at PageID 209.) While this date is immaterial for the resolution of this matter, the undersigned adopts the May 26 date because the Administrative Law Judge used that date in his decision.

conclude that Plaintiff is not disabled for purposes of receiving Title XVI benefits. (ECF No. 10-2 at PageID 35-42.) At the first step, ALJ Peebles concluded that Plaintiff has not engaged in substantial gainful activity since May 26, 2021. (Id. at PageID 37.) At the second step, ALJ Peebles found that Plaintiff had the following severe impairments: bicuspid aortic valve with left ventricular outflow tract obstruction and aortic valve insufficiency. (Id.) At the third step, ALJ Peebles found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.) ALJ Peebles explained that Plaintiff's cardiac impairments

> d[o] not meet the criteria of Listing 4.06, *Symptomatic congenital heart disease* because he does not have cyanosis at rest with hematocrit of 55 percent or greater, or arterial oxygen saturation of less than 90 percent in room air, or resting arterial PO$_2$ of 60 Torr or less. He does not have intermittent right-to-left shunting resulting in cyanosis on exertion with arterial PO$_2$ of 60 Torr or less at a workload equivalent to 5 METS or less. Finally, the claimant does not have secondary pulmonary vascular obstructive disease with pulmonary arterial systolic pressure elevated to at least 70 percent of the systematic arterial systolic pressure.

(Id. at PageID 37-38.)

Accordingly, ALJ Peebles considered Plaintiff's residual functional capacity ("RFC"). He found that Plaintiff

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except he cannot climb ladders, ropes, scaffolds; can occasionally climb ramps and stairs; can occasionally crouch, stoop, kneel,

crawl; cannot work in extreme heat or cold as defined by the Selected Characteristics of Occupations; would need to work indoors in a climate controlled settings [sic]; would need to avoid concentrated exposure to pulmonary irritants.

(Id. at PageID 38.)[3] In reaching this determination, ALJ Peebles discussed Plaintiff's allegations and medical records. He explained that Plaintiff "alleges disability primarily due to heart problems which have been present since birth," but that his "allegations of disability are only partially supported by the evidence of record." (Id. at PageID 39.) Summarizing the medical evidence, ALJ Peebles wrote:

The medical evidence documents that [Plaintiff] underwent a successful aortic valve replacement in 2011 (Ex. 1F/23). At a follow up visit in February 2022, there was noted to be some concern for conduit stenosis (Ex. 2F). However, [Plaintiff] subsequently reported doing very well and denied experiencing chest pains, palpitations, syncope, lightheadedness, dizziness, or edema (Ex. 2F). [Plaintiff] underwent cardiac catheterization for balloon angioplasty to repair the conduit stenosis in March 2022. At his follow up visit in April 2022, [Plaintiff] was noted to have no cardiac complaints or symptoms. He denied chest pain, shortness of breath, dizziness, lightheadedness, palpitations, orthopnea, pedal edema, or syncope (Ex. 3F/5).

An April 2022 echocardiogram was stable and unchanged from prior evaluations with no evidence of new or worsening aortic regurgitation. His EKG done at time was also stable. [Plaintiff] was encouraged to increase

---

[3]Pursuant to 20 C.F.R. § 404.1567(b), light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." Additionally, light work includes jobs "requir[ing] a good deal of walking or standing, or [that] involve[] sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

physical activity (Ex. 3F/8). [Plaintiff] returned for
follow up in May 2022 and reported being asymptomatic
and spending most of his time playing video games (Ex.
3F/33).

The medical evidence of record documents no further
cardiac care.

(Id.)

ALJ Peebles then assessed the medical record against the

report of Dr. Peter Gardner, who evaluated Plaintiff in March 2023.

(Id.) ALJ Peebles wrote that

Dr. Gardner's report and assessment are wholly
inconsistent with the remaining medical evidence of
record. For example, Dr. Gardner noted that [Plaintiff]
has limited exertional stamina and often experiences
associated shortness of breath, but as noted above, at
his last visit in May 2022 as well as previous visits in
March and April 2022, [Plaintiff] had no complaints and
specifically denied experiencing shortness of breath. To
continue, Dr. Gardner opined that [Plaintiff] can only
occasionally reach and handle because of fatigue; this
is inconsistent with [Plaintiff's] cardiac specialists
who have noted that [Plaintiff] needs to engage in
regular exercise as well as their notations that
[Plaintiff] was asymptomatic. Regular syncopal episodes
as described by Dr. Gardner are also not supported by
[Plaintiff's] treatment records as of his protective
filing date. Dr. Gardner limits [Plaintiff] to
occasional handling, yet [Plaintiff] has reported to
medical providers spending most of his time playing
video games.

(Id. at PageID 39-40.) ALJ Peebles then considered Plaintiff's own

testimony.

[Plaintiff] testified that he is unable to work due to
his impairments. He stated that he has no stamina and
that he has to take a break about every 15 minutes. He
stated that he sees his heart doctor every six months
and that his medications make him sleepy. When asked,
[Plaintiff] admitted that his doctors have encouraged

him to exercise. He stated that he spends his days
playing video games, but that after 10 minutes or so, he
gets out of breath and has to rest. The medical evidence
of record, however, does not support [Plaintiff's]
testimony. As noted above, [Plaintiff] reported no
complaints at multiple visits following his last
procedure, and he has not received any ongoing care since
May 2022. At his last visit, he reported being
asymptomatic, and he was encouraged to increase his
physical activity by his treating specialists.

(Id. at PageID 40.) ALJ Peebles concluded that Plaintiff's
"medically determinable impairments could reasonably be expected
to cause the alleged symptoms; however, [Plaintiff's] statements
concerning the intensity, persistence and limiting effects of
these symptoms are not entirely consistent with the medical
evidence and other evidence in the record for the reasons explained
in this decision." (Id.)

ALJ Peebles then considered the medical opinions and prior
administrative medical findings. (Id.) Regarding Dr. Gardner, ALJ
Peebles found his opinion "is not persuasive for the reasons noted
above," and that "[h]is assessment is not at all consistently [sic]
with [Plaintiff's] treatment records and [Plaintiff's] statements
to his medical providers." (Id.) ALJ Peebles then found that "[t]he
opinion of the state agency reconsideration physician [Dr.
Sannagai Brown] is not persuasive. Consistent medium level work is
not supported by the nature of [Plaintiff's] impairments, which
are documented to be a lifelong condition." (Id.) ALJ Peebles then
explained that "[t]he opinion of the initial state agency

- 6 -

consultant [Dr. Leonard Comess] is persuasive" because it "is well aligned with the medical evidence of record which documents repeated instances in which [Plaintiff] made no cardiac complaints followed by long period in which [Plaintiff] did not seek any treatment."[4] (Id.)

At step four, ALJ Peebles concluded that Plaintiff could not perform any of his past relevant work. (Id.) Plaintiff previously worked as a warehouse worker, which ALJ Peebles noted required a medium exertional level. (Id.) ALJ Peebles relied on the testimony of the vocational expert that Plaintiff would be unable to perform the requirements of this job. (Id. at PageID 41.)

At step five, ALJ Peebles concluded that, based on Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. (Id.) ALJ Peebles noted that Plaintiff was 20 years old when he applied for benefits, that he had at least a high school education, and that the transferability of his job skills was not an issue because his past relevant work was

---

[4]Dr. Comess similarly found that Plaintiff had a RFC of light work. (ECF No. 10-3 at PageID 75.) However, whereas ALJ Peebles concluded that Plaintiff could occasionally crouch, stoop, kneel, or crawl, (ECF No. 10-2 at PageID 38), Dr. Comess found that Plaintiff could frequently do these things, (ECF No. 10-3 at PageID 72). Dr. Comess also concluded that Plaintiff needed to avoid concentrated exposure to extreme cold and heat, (id. at PageID 73), while ALJ Peebles found that Plaintiff could not tolerate any exposure, (ECF No. 10-2 at PageID 38).

unskilled. (Id.) At the hearing, the vocational expert testified that, based on Plaintiff's age, education, work experience, and RFC, he could perform the jobs "produce weigher," "vending machine attendant," and "garme[n]t sorter," for which there were 60,000, 44,000, and 229,00 jobs available nationwide, respectively. (Id.) Accordingly, ALJ Peebles concluded that Plaintiff could make a successful adjustment to other work existing in significant numbers in the national economy, and that Plaintiff was not disabled. (Id. at PageID 42.)

Plaintiff now seeks judicial review of ALJ Peebles's decision. On appeal, he argues that ALJ Peebles's RFC finding is not supported by substantial evidence, and that ALJ Peebles failed to articulate the consistency and supportability factors under 20 C.F.R. § 416.920c when evaluating the medical opinion and prior administrative medical opinion evidence.

## II. ANALYSIS

### A. Standard of Review

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he or she was a party. "The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Judicial review of the

Commissioner's decision is limited to whether there is substantial evidence to support the decision and whether the Commissioner used the proper legal criteria in making the decision. Id.; Cardew v. Comm'r of Soc. Sec., 896 F.3d 742, 745 (6th Cir. 2018); Cole v. Astrue, 661 F.3d 931, 937 (6th Cir. 2011); Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Kirk v. Sec'y of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981) (quoting Richardson v. Perales, 402 U.S. 389 (1971)).

In determining whether substantial evidence exists, the reviewing court must examine the evidence in the record as a whole and "must 'take into account whatever in the record fairly detracts from its weight.'" Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990) (quoting Garner v. Heckler, 745 F.2d 383, 388 (6th Cir. 1984)). If substantial evidence is found to support the Commissioner's decision, however, the court must affirm that decision and "may not even inquire whether the record could support a decision the other way." Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994) (quoting Smith v. Sec'y of Health & Hum. Servs., 893 F.2d 106, 108 (6th Cir. 1989)). Similarly, the court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility. Ulman v. Comm'r of Soc. Sec., 693 F.3d

709, 713 (6th Cir. 2012) (citing Bass v. McMahon, 499 F.3d 506, 509 (6th Cir. 2007)). Rather, the Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations, and to resolve material conflicts in the testimony. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 528 (6th Cir. 1997); Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990).

**B.    The Five-Step Analysis**

The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1). Additionally, section 423(d)(2) of the Act states that:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

Id. § 423(d)(2). Under the Act, the claimant bears the ultimate burden of establishing an entitlement to benefits. Oliver v. Comm'r of Soc. Sec., 415 F. App'x 681, 682 (6th Cir. 2011). The initial

burden is on the claimant to prove she has a disability as defined
by the Act. Siebert v. Comm'r of Soc. Sec., 105 F. App'x 744, 746
(6th Cir. 2004) (citing Walters, 127 F.3d at 529); see also Born
v. Sec'y of Health & Hum. Servs., 923 F.2d 1168, 1173 (6th Cir.
1990). If the claimant is able to do so, the burden then shifts to
the Commissioner to demonstrate the existence of available
employment compatible with the claimant's disability and
background. Born, 923 F.2d at 1173; see also Griffith v. Comm'r of
Soc. Sec., 582 F. App'x 555, 559 (6th Cir. 2014).

Entitlement to social security benefits is determined by a
five-step sequential analysis set forth in the Social Security
Regulations. See 20 C.F.R. §§ 404.1520, 416.920. First, the
claimant must not be engaged in substantial gainful activity. See
20 C.F.R. §§ 404.1520(b), 416.920(b). Second, a finding must be
made that the claimant suffers from a severe impairment. 20 C.F.R.
§§ 404.1520(a)(4)(ii), 416.920(a)(5)(ii). In the third step, the
ALJ determines whether the impairment meets or equals the severity
criteria set forth in the Listing of Impairments contained in the
Social Security Regulations. See id. §§ 404.1520(d), 404.1525,
404.1526. If the impairment satisfies the criteria for a listed
impairment, the claimant is considered to be disabled. On the other
hand, if the claimant's impairment does not meet or equal a listed
impairment, the ALJ must undertake the fourth step in the analysis
and determine whether the claimant has the RFC to return to any

- 11 -

past relevant work. See id. §§ 404.1520(a)(4)(iv), 404.1520(e). If the ALJ determines that the claimant can return to past relevant work, then a finding of "not disabled" must be entered. Id. But if the ALJ finds the claimant unable to perform past relevant work, then at the fifth step the ALJ must determine whether the claimant can perform other work existing in significant numbers in the national economy. See id. §§ 404.1520(a)(4)(v), 404.1520(g)(1), 416.960(c)(1)-(2). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. Id. § 404.1520(a)(4).

## C.    Plaintiff's RFC

Plaintiff first argues that ALJ Peebles's RFC finding is not supported by substantial evidence. (ECF No. 15 at PageID 597.)  A RFC "is the most [an individual] can still do despite [their] limitations." 20 C.F.R. § 404.1545. According to Plaintiff, ALJ Peebles impermissibly relied on Plaintiff's "symptomology at full rest," and ignored evidence in the record of his "symptomology upon exertion," including Plaintiff's medical records and his own statements. (Id. at PageID 597-98.) Plaintiff argues that the evidence ignored by ALJ Peebles "supports a finding of substantially less than light level work capacity." (Id. at PageID 600.) In response, the Commissioner argues that Plaintiff's rest/exertion dichotomy is without legal justification, and that

Plaintiff is essentially asking that the court impermissibly reweigh the evidence in his favor. (ECF No. 17 at PageID 614-15.)

The undersigned finds that ALJ Peeble's decision is supported by substantial evidence. The record reflects that Plaintiff underwent two successful major heart surgeries in 2011, (ECF No. 10-7 at PageID 406), and a subsequent cardiac catheterization in March 2022. (Id. at PageID 413.) In reaching his determination, ALJ Peebles specifically relied upon Plaintiff's treatment records and his statements to his healthcare providers. (ECF No. 10-2 at PageID 39-40.) Indeed, ALJ Peebles focused on records from Plaintiff's doctors visits in March, April, and May 2022, in which Plaintiff denied having symptoms, including fatigue, chest pain, shortness of breath, lightheadedness, or palpitations. (ECF No. 10-7 at PageID 404, 443, 471.) His physicians also encouraged him to increase his physical activity, (id. at PageID 446, 474), which Plaintiff admitted in his testimony, (ECF No. 10-2 at PageID 54). ALJ Peebles also focused on Plaintiff's echocardiogram results in April 2022 showing that his condition was stable and unchanged from prior evaluations. (ECF No. 10-7 at PageID 446.) Thus, substantial evidence supports ALJ Peebles's decisions.

Plaintiff's arguments to the contrary are not persuasive. First, Plaintiff discounts the objective medical evidence ALJ Peebles relied upon by crafting a rest/exertion dichotomy, but the reality is that ALJ Peebles still relied upon objective medical

evidence, as he was required to do. Plaintiff points to no legal authority to support his distinction between rest and exertion, and he essentially invites the court to impermissibly reweigh the evidence. Second, even though Plaintiff's own statements suggested lower capacity than ALJ Peebles's final determination, ALJ Peebles was "not required to accept [Plaintiff's] subjective complaints"; he could properly scrutinize Plaintiff's credibility, especially where he felt Plaintiff's statements were not consistent with objective medical evidence. See Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476-77 (6th Cir. 2003). Alas, an ALJ's decision "is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997) (citing Crum, 921 F.2d at 644). Accordingly, the undersigned finds that there is substantial evidence to support ALJ Peebles's RFC determination.

## D.  Consistency and Supportability

Plaintiff also argues that ALJ Peebles violated the mandatory evidence evaluation criteria of 20 C.F.R. § 416.920c. (ECF No. 15 at PageID 600-06.) 20 C.F.R. § 416.920c states, in relevant part:

> (a) How we consider medical opinions and prior administrative medical findings. We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from

your medical sources. When a medical source provides one
or more medical opinions or prior administrative medical
findings, we will consider those medical opinions or
prior administrative medical findings from that medical
source together using the factors listed in paragraphs
(c)(1) through (c)(5) of this section, as appropriate.
The most important factors we consider when we evaluate
the persuasiveness of medical opinions and prior
administrative medical findings are supportability
(paragraph (c)(1) of this section) and consistency
(paragraph (c)(2) of this section). We will articulate
how we considered the medical opinions and prior
administrative medical findings in your claim according
to paragraph (b) of this section.

(b) How we articulate our consideration of medical
opinions and prior administrative medical findings. We
will articulate in our determination or decision how
persuasive we find all of the medical opinions and all
of the prior administrative medical findings in your
case record. Our articulation requirements are as
follows:

    ...

    (2) Most important factors. The factors of
    supportability (paragraph (c)(1) of this section)
    and consistency (paragraph (c)(2) of this section)
    are the most important factors we consider when we
    determine how persuasive we find a medical source's
    medical opinions or prior administrative medical
    findings to be. Therefore, we will explain how we
    considered the supportability and consistency
    factors for a medical source's medical opinions or
    prior administrative medical findings in your
    determination or decision. We may, but are not
    required to, explain how we considered the factors
    in paragraphs (c)(3) through (c)(5) of this
    section, as appropriate, when we articulate how we
    consider medical opinions and prior administrative
    medical findings in your case record.

    ...

(c) Factors. We will consider the following factors when
we consider the medical opinion(s) and prior
administrative medical finding(s) in your case:

- 15 -

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c. Plaintiff argues that ALJ Peebles failed to properly explain the supportability and consistency factors for Drs. Comess's and Gardner's opinions. (ECF No. 15 at PageID 603-06.)

1.  *Dr. Comess*

In his written decision, ALJ Peebles's discussion of Dr. Comess's medical determinations reads as follows:

The opinion of the initial state agency consultant is persuasive. (Ex. 1A). The opinion is well aligned with the medical evidence of record which documents repeated instances in which [Plaintiff] made no cardiac complaints followed by long period in which [Plaintiff] did not seek any treatment.

(ECF No. 10-2 at PageID 40.) Plaintiff argues that ALJ Peebles addressed neither supportability nor consistency. (ECF No. 15 at PageID 604.) In opposition, the Commissioner argues that ALJ Peebles's use of "well aligned" "speaks directly to consistency." (ECF No. 17 at PageID 619.) While the Commissioner concedes that ALJ Peebles did not discuss supportability, he argues that remand

- 16 -

is still not warranted for two reasons. (Id.) First, the Commissioner argues that Dr. Comess and ALJ Peebles reviewed the same medical evidence, and that the supportability analysis would be redundant.[5] (Id. at PageID 619.) Second, the Commissioner argues that ALJ Peebles's decision was actually more favorable to Plaintiff than that of Dr. Comess because he found additional restrictions, including for crouching, stooping, kneeling, and crawling. (Id. at PageID 610.)

Considering consistency, the undersigned finds that ALJ Peebles adequately explained consistency. ALJs need not use the precise terms where their opinions indicate consideration of those factors. See Kearns v. Comm'r of Soc. Sec., No. 3:19 CV 01243, 2020 WL 2841707, at *9 (N.D. Ohio Feb. 3, 2020) (finding that the ALJ addressed supportability and consistency even where those terms were not used), report and recommendation adopted, No. 3:19-CV-1243, 2020 WL 2839654 (N.D. Ohio June 1, 2020). ALJ Peebles outlined the medical evidence he relied upon and concluded that Dr. Comess's opinion was "well aligned," (ECF No. 10-2 at PageID 40), indicating that it was consistent. Though he did not reproduce that evidence a second time, requiring him to do so would needlessly put form over substance.

---

[5]This argument is not persuasive. Dr. Comess's opinion was finalized on April 14, 2022, (ECF No. 10-3 at PageID 76), and the record reflects that ALJ Peebles considered additional medical evidence from after this date.

Considering supportability, both parties agree that ALJ Peebles did not discuss this factor. Though neither party has addressed this, several courts within the Sixth Circuit have applied a harmless error standard where ALJs have failed to articulate consistency or supportability. See, e.g., Sierra H. v. O'Malley, No. 1:23-CV-00166-HBB, 2024 WL 3879511, at *4 (W.D. Ky. Aug. 20, 2024). There are three circumstances where "an ALJ's failure to explain his consideration of the supportability and consistency factors of a medical opinion" can be deemed harmless error: "(1) the medical opinion is patently deficient; (2) the ALJ adopted the medical opinion or made findings consistent with the opinion; or (3) the goal of the regulation was otherwise met." Id. (citing Jada H. v. Kijakazi, No. 3:22-CV-00520-CRS, 2023 WL 10325777, at *4 (W.D. Ky. Nov. 28, 2023)). Under the second prong, the undersigned independently finds that ALJ Peebles's failure to discuss supportability is harmless error because his RFC finding is consistent with that of Dr. Comess: both found that Plaintiff could perform light work. (ECF Nos. 10-2 at PageID 38; 10-3 at PageID 75.) And, as the Commissioner highlights, ALJ Peebles's formulation is actually more restrictive in some respects, including that ALJ Peebles found Plaintiff could only occasionally crouch, stoop, kneel, or crawl, (ECF No. 10-2 at PageID 38), whereas Dr. Comess found that Plaintiff could frequently do these tasks, (ECF No. 10-3 at PageID 72). Because ALJ Peebles's findings

are consistent with those of Dr. Comess, "[t]he [c]ourt will not fault the ALJ for finding more restrictions than the state agency reviewers opined." Laney v. Comm'r of Soc. Sec., No. 5:21-CV-01290-CEH, 2022 WL 2176539, at *7 (N.D. Ohio June 16, 2022) (citing Mosed v. Comm'r of Soc. Sec., No. 2:14-CV-14357, 2016 WL 6211288, at *7 (E.D. Mich. Jan. 22, 2016), report and recommendation adopted, 2016 WL 1084679 (E.D. Mich. Mar. 21, 2016); Warren v. Comm'r of Soc. Sec., No. 13-cv-13523, 2014 WL 3708565, at *4 (E.D. Mich. July 28, 2014)) (finding that the ALJ making more restrictive RFC findings was not a basis for remand).

   2.   *Dr. Gardner*

   In his written decision, ALJ Peebles found that Dr. Gardner's opinion was not persuasive, writing that "[h]is assessment is not at all consistently [sic] with [Plaintiff's] treatment records and [his] statements to his medical providers." (ECF No. 10-2 PageID 40.) Discussing Dr. Gardner's evaluation, ALJ Peebles found it "wholly inconsistent with the remaining medical evidence in the record." (Id. at PageID 39.) ALJ Peebles explained:

> For example, Dr. Gardner noted that [Plaintiff] has limited exertional stamina and often experiences associated shortness of breath, but as noted above, at his last visit in May 2022 as well as previous visits in March and April 2022, [Plaintiff] had no complaints and specifically denied experiencing shortness of breath. To continue, Dr. Gardner opined that [Plaintiff] can only occasionally reach and handle because of fatigue; this is inconsistent with [Plaintiff] cardiac specialists who have noted that [Plaintiff] needs to engage in regular exercise as well as their notations that [Plaintiff] was

- 19 -

asymptomatic. Regular syncopal episodes as described by Dr. Gardner are also not supported by [Plaintiff's] treatment records as of his protective filing date. Dr. Gardner limits [Plaintiff] to occasional handling, yet [Plaintiff] has reported to medical providers spending most of his time playing video games.

(Id. at PageID 39-40.)

Plaintiff contends that ALJ Peebles did not discuss supportability or consistency. (ECF No. 15 at PageID 606.) These arguments are unavailing. First, although ALJ Peebles did not use the term "supportability," he discussed the specific evidence that Dr. Gardner relied upon in explaining why Dr. Gardner's opinion was not persuasive. Second, ALJ Peebles specifically addressed consistency: he found that Dr. Gardner's opinion was "wholly inconsistent" with the rest of the medical record, including Plaintiff's treatment records and Plaintiff's statements to his providers. (ECF No. 10-2 at PageID 39-40.) Thus, it is clear that ALJ Peebles addressed supportability and consistency when discussing Dr. Gardner's opinion.

### III. CONCLUSION

For the above reasons, the decision of the Commissioner is AFFIRMED.

IT IS SO ORDERED.

s/Tu M. Pham
TU M. PHAM
Chief United States Magistrate Judge

March 21, 2025
Date